UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DAMIAN AYARZAGOITIA,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>JAY CHRISTENSEN and BRAD LITTLE,<br><br>　　　　　　　Defendants. | Case No. 1:19-cv-00284-DCN<br><br>**INITIAL REVIEW ORDER** |

　　　　The Clerk of Court conditionally filed Plaintiff Damian Ayarzagoitia's Complaint as a result of Plaintiff's status as an inmate and in forma pauperis request. Plaintiff has since filed an Amended Complaint.[1] *See* Dkt. 7. The Court now reviews the Amended Complaint to determine whether it or any of the claims contained therein should be summarily dismissed under 28 U.S.C. §§ 1915 and 1915A. Having reviewed the record, and otherwise being fully informed, the Court enters the following Order.

**1.　　Screening Requirement**

　　　　The Court must review complaints filed by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity, as well as complaints filed in forma pauperis, to determine whether summary dismissal is appropriate. The Court must dismiss a complaint or any portion thereof that states a frivolous or

---

[1] After filing his Amended Complaint, Plaintiff also filed a second amended complaint that omitted claims against Defendant Christensen. Plaintiff has since moved to withdraw the second amended complaint, and the Court will grant the motion. Therefore, the Court reviews the Amended Complaint (Dkt. 7) as the operative complaint in this case and will reinstate Jay Christensen as a named defendant.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 1

malicious claim, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b).

2. **Pleading Standard**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint fails to state a claim for relief under Rule 8 if the factual assertions in the complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In other words, although Rule 8 "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (internal quotation marks omitted). If the facts pleaded are "merely consistent with a defendant's liability," or if there is an "obvious alternative explanation" that would not result in liability, the complaint has not stated a claim for relief that is plausible on its face. *Id.* at 678, 682 (internal quotation marks omitted).

3. **Factual Allegations**

Plaintiff is a prisoner in the custody of the Idaho Department of Correction ("IDOC"). He is currently incarcerated at Eagle Pass Correctional Facility ("EPCF") in Eagle Pass, Texas. EPCF is operated by a private prison company that has contracted with the IDOC for the housing of Idaho prisoners. Plaintiff was transferred to EPCF from the Idaho State Correctional Center ("ISCC") in October 2018. *See Compl.*, Dkt. 7, at 2.

Plaintiff contends that, before his transfer to EPCF, he sent a concern form to Defendant Christensen, the warden at ISCC, stating that Plaintiff had a "green light" placed against him by two prison gangs—the Aryan Knights ("AK") and the Severely Violent Criminals ("SVC"). *Id*. A green light means that every gang member is tasked with attacking the green-lit inmate on sight. *Id*. Knowing that members of these gangs were housed at EPCF, Plaintiff told Defendant Christensen it would not be safe for him to be transferred.

Despite these concerns, Plaintiff was transferred to EPCF on October 9, 2018. That same day, Plaintiff was attacked by prison gang members and suffered serious injury. *Id*. at 2–3. Plaintiff later told the Director of the IDOC about the attack, but "nothing has happened to fix the issue." *Id*. at 3. In May 2019, Plaintiff was placed in protective custody at EPCF, but he believes he is "still at risk of serious physical injury." *Id*.

Plaintiff claims that Defendant Christensen's inaction, which permitted Plaintiff's transfer to EPCF, violated the Eighth Amendment and Idaho Code § 20-241A. *Id*. at 2–5.

Plaintiff also asserts claims against Idaho Governor Brad Little. He contends that Idaho Code §§ 20-209H, 20-209(3) and (4), and 20-241A are unconstitutional as violating the Eighth or Fourteenth Amendments. *Id*. at 6–8. Plaintiff also asserts that Idaho Code § 20-209H violates other Idaho statutes—specifically, Idaho Code §§ 19-5305(1) and (2), 19-4708(1) and (2)(c), and 19-4707. *Id*.

4. **Section 1983 Claims**

   A. *Standards of Law*

   Plaintiff brings claims under 42 U.S.C. § 1983, the civil rights statute. To state a plausible civil rights claim, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To be liable under § 1983, "the defendant must possess a purposeful, a knowing, or possibly a reckless state of mind." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472 (2015). Negligence is not actionable under § 1983, because a negligent act by a public official is not an abuse of governmental power but merely a "failure to measure up to the conduct of a reasonable person." *Daniels v. Williams*, 474 U.S. 327, 332 (1986).

   Prison officials generally are not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Section 1983 does not allow for recovery against an employer or principal simply because an employee or agent committed misconduct. *Taylor*, 880 F.2d at 1045. However, "[a] defendant may be held liable as a supervisor under § 1983 'if there exists ... a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)).

A plaintiff can establish this causal connection by alleging that a defendant (1) "set[] in motion a series of acts by others"; (2) "knowingly refus[ed] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury"; (3) failed to act or improperly acted in the training, supervision, or control of his subordinates"; (4) "acquiesc[ed] in the constitutional deprivation"; or (5) engag[ed] in "conduct that showed a reckless or callous indifference to the rights of others." *Id*. at 1205-09.

The Eighth Amendment to the United States Constitution protects prisoners against cruel and unusual punishment. To state a claim under the Eighth Amendment, a plaintiff must show that he is (or was) "incarcerated under conditions posing a substantial risk of serious harm," or that he has been deprived of "the minimal civilized measure of life's necessities" as a result of Defendants' actions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). An Eighth Amendment claim requires a plaintiff to satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc).

To rise to the level of an Eighth Amendment violation, the deprivation alleged must be objectively sufficiently harmful, *Farmer*, 511 U.S. at 834, or, in other words, sufficiently "grave" or "serious," *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). As the United States Supreme Court has explained:

> Not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny, however. After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment. To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety.

*Whitley v. Albers*, 475 U.S. 312, 319 (1986) (internal quotation marks, citation, and alteration omitted).

With respect to the subjective prong of an Eighth Amendment analysis, a defendant acts with deliberate indifference only if the defendant (1) was aware of the risk to the prisoner's health or safety, and (2) deliberately disregarded that risk. *Farmer*, 511 U.S. at 837. Prison officials who actually knew of a substantial risk will not be liable under § 1983 "if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id*. at 844. Mere negligence is not sufficient to establish deliberate indifference; rather, the official's conduct must have been wanton. *Id*. at 835.

Prison officials who act with deliberate indifference "to the threat of serious harm or injury" by one prisoner against another are subject to liability under § 1983. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). "Having incarcerated persons with demonstrated proclivities for antisocial criminal, and often violent, conduct, having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." *Farmer*, 511 U.S. at 833 (internal quotation marks, citation, and alterations omitted). Although even an obvious danger does not result in liability if the official is not

subjectively aware of it, a prison official cannot "escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault." *Id.* at 843.

The standard governing most constitutional claims of inmates—other than Eighth Amendment claims—was outlined by the United States Supreme Court in *Turner v. Safley*, 482 U.S. 78 (1987). There, the Court examined the free speech issue in the context of prison officials prohibiting correspondence between inmates residing at different state institutions. The Court held that "when a prison regulation [or official action] impinges on inmates' constitutional rights, the regulation [or action] is valid if it is reasonably related to legitimate penological interests." *Id.* at 89.

The *Turner* Court identified four factors to consider when determining whether a prison regulation or prison official's action is valid: (1) whether there is a "rational connection between the prison regulation [or official action] and the legitimate governmental interest put forward to justify it"; (2) whether "there are alternative means of exercising the right that remain open to prison inmates"; (3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether "ready alternatives" at a "de minimis cost" exist, which "may be evidence that the regulation [or official action] is not reasonable, but is an exaggerated response to prison concerns." *Id.* at 89-93.

The *Turner* analysis appropriately allows prison officials substantial leeway in the management of their prisons because "[s]ubjecting the day-to-day judgments of prison

officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration." *Id.* at 89. Federal courts must apply the *Turner* test so as to "accord great deference to prison officials' assessments of their interests." *Michenfelder v. Sumner*, 860 F.2d 328, 331 (9th Cir. 1988).

The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law. Due process claims of prisoners are subject to the deferential *Turner* analysis. *See Washington v. Harper*, 494 U.S. 210, 225 (1990) (rejecting under *Turner* a due process challenge to involuntary medication).

A plaintiff cannot state a colorable due process claim unless he plausibly alleges that he was deprived of a protected interest. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 459-60 (1989). Because liberty interests are "generally limited to freedom from restraint," the Supreme Court has held that a prisoner possesses a liberty interest under the federal Constitution only when a change occurs in confinement that imposes an "atypical and significant hardship ... in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

In addition to this type of liberty interest, which arises under the federal Constitution, liberty interests can also be created by state law. A state creates such a liberty interest by passing a statute or administrative rule that "contains mandatory language and imposes substantive limitations on the discretion of those" making the challenged decision

or otherwise taking the challenged government action. *Moor v. Palmer*, 603 F.3d 658, 661 (9th Cir. 2010).

Once a plaintiff establishes a protected interest, the second question is what sort of process was due to the plaintiff. The "essence of due process" is notice and an opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976).

Due process is a flexible concept and calls for such procedural protections as the particular situation demands. *Id.* at 334. The specific process to which a person is entitled depends on the consideration of three factors: (1) the private interest ... affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used[] and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id*. at 335.

The Equal Protection Clause of the Fourteenth Amendment guards against arbitrary discrimination by government officials. Although "all persons similarly circumstanced shall be treated alike" by governmental entities, *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920), "[t]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same," *Tigner v. Texas*, 310 U.S. 141, 147 (1940). Even where similarly situated persons are treated differently by the state, "state action is presumed constitutional and 'will not be set aside if any set of facts reasonably may be conceived to justify it.'" *More v. Farrier*, 984 F.2d 269, 271 (9th Cir. 1993) (quoting *McGowan v. Maryland*, 366 U.S. 420, 426 (1961)). Absent evidence of

invidious discrimination, the federal courts should defer to the judgment of prison officials. *See id*. at 277; *Youngbear v. Thalacker*, 174 F. Supp. 2d 902, 916 (D. Iowa 2001) ("There can be no 'negligent' violations of an individual's right to equal protection.... There is no evidence from which the court may infer that the defendants' asserted reasons for delaying the construction of a sweat lodge at the [prison] were a pretext for discrimination.").

Equal protection claims alleging disparate treatment or classifications generally are subject to a heightened standard of scrutiny if they involve a "suspect" or "quasi-suspect" class, such as race, national origin, or sex, or when they involve a burden on the exercise of fundamental personal rights protected by the Constitution. *See, e.g., City of Cleburne v. Cleburne Living Ctr., Inc*., 473 U.S. 432, 440 (1985).

Inmates are not a protected class under the Equal Protection Clause. *Webber v. Crabtree*, 158 F.3d 460, 461 (9th Cir. 1998). As a result, claims of dissimilar treatment of inmates are subject to a rational basis inquiry. *See Heller v. Doe*, 509 U.S. 312, 319-20 (1993). In a rational basis analysis, the relevant inquiry is whether Defendants' action is "patently arbitrary and bears no rational relationship to a legitimate governmental interest." *Vermouth v. Corrothers*, 827 F.2d 599, 602 (9th Cir. 1987) (quotation omitted).

In addition to the deference inherent in a rational basis inquiry, the *Turner* analysis applies to equal protection claims of prisoners and requires an additional layer of deference. *See Walker v. Gomez*, 370 F.3d 969, 974 (9th Cir. 2004) ("In the prison context, ... even fundamental rights such as the right to equal protection are judged by a standard of reasonableness—specifically, whether the actions of prison officials are reasonably related

to legitimate penological interests." (quotation omitted)). That is, any rational basis for dissimilar treatment in prison will defeat a prisoner's equal protection claim. *Id*.

### B. *Failure-to-Protect Claim against Defendant Christensen*

Plaintiff asserts that Defendant Christensen failed to protect him from attack by other inmates at EPCF. Christensen allegedly failed to prevent Plaintiff's transfer despite being aware that Plaintiff was particularly susceptible to attack by members of the AK and SVC at EPCF. *Compl.* at 4. These allegations, liberally construed, appear to state a plausible Eighth Amendment failure-to-protect claim against Defendant Christensen. Thus, Plaintiff may proceed on that claim.

### C. *Claims Challenging the Constitutionality of Idaho Code § 20-209H, Which Permits Withdrawal of Restitution from Inmate Accounts*

The Complaint asserts that Idaho Code § 20-209H violates the Eighth and Fourteenth Amendments. *Compl.* at 6. Section 20-209H requires the Idaho Board of Correction to set up accounts for all prisoners held in state facilities. It also permits the Board to withdraw funds from inmates' accounts where a court has ordered restitution:

> If the court ordered an inmate to make restitution under section 19-5304, Idaho Code, and the restitution is still owing, then twenty percent (20%) of each deposit in the inmate's account shall be paid to the state board of correction who shall, within five (5) days after the end of the month, pay such moneys to the clerk of the court in which the restitution order was entered for payment to the victim.

Idaho Code § 20-209H. Plaintiff asserts that this statute violates the Constitution because it allows the withdrawal of restitution payments without a specific court order "instructing IDOC to deduct money" from the particular inmate's account. *Compl.* at 6.

Idaho Code § 20-209H does not violate the Eighth Amendment. Requiring a prisoner to pay restitution that has already been ordered does not deprive that prisoner of "the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834. The statute does not allow withdrawal unless there is, in fact, money in the account—20% of zero is still zero. Further, if the prisoner does have money in the account, the statute does not permit the Board to withdraw all of it—only 20%. Moreoever, Plaintiff's basic needs are paid for by the State during incarceration. Thus, § 20-209H does not violate the Eighth Amendment.

Nor does the statute violate due process or equal protection principles. First, although Plaintiff has a property interest in the money in his prison trust account, *Quick v. Jones*, 754 F.2d 1521, 1523 (9th Cir. 1985), he already received all the process to which he was due. Plaintiff received notice and an opportunity to be heard in the underlying criminal proceeding that resulted in the restitution order.

Second, Plaintiff has not plausibly alleged that other, similarly situated inmates being treated differently with respect to restitution payments being withdrawn from their prison trust accounts. And providing for payment of restitution for crime victims is rationally related to a legitimate penological interest. Thus, Plaintiff has not stated a colorable equal protection claim.

Finally, the fact that there are "laws in effect that already provide for the collection of restitution" is irrelevant. *Compl.* at 6. A state legislature is not prohibited from providing different means of collection of restitution judgments, or from passing multiple statutes that govern the same subject matter.

For the foregoing reasons, Plaintiff's constitutional claims regarding § 20-209H must be dismissed.

### D. Claims Challenging the Constitutionality of Idaho Code § 20-209(3) and (4) and Idaho Code § 20-241A, Which Govern Private Prison Contracts

Plaintiff asserts that other Idaho statutory sections violate the Due Process Clause. Idaho Code § 20-209 places the "control, direction and management" of correctional facilities" with the Board of Correction. Subsections (3) and (4) authorize the Board to "enter into contracts with private prison contractors" and to promulgate rules and standards applicable to private prison contractors. Similarly, Idaho Code § 20-241A authorizes the Board to enter into agreements "with the proper authorities of the United States, another state, a political subdivision of this state or another state, or a private prison contractor, to provide for the safekeeping, care, subsistence, proper government, discipline, and to provide programs for the reformation, rehabilitation and treatment of prisoners."

Plaintiff asserts that the Due Process Clause requires a hearing before any inmate is transferred to an out-of-state private prison facility in accordance with § 20-209(3) and (4) and § 20-241A. *Compl.* at 7. Plaintiff is incorrect. A prisoner does not have a liberty interest in being be housed in a particular facility or in a particular unit within a facility. *Meachum v. Fano*, 427 U.S. 215, 255 (1976); *McCune v. Lile*, 536 U.S. 24, 38 (2002). Therefore, Plaintiff's due process claims regarding § 20-209(3), § 20-209(4), and § 20-241A must be dismissed.

### 5. State Law Claims

Finally, Plaintiff asserts claims under the following Idaho statutory sections:

- Idaho Code § 20-241A, which permits contracts with other entities, including private prison contractors, for the safekeeping and housing of Idaho inmates. *Compl.* at 4.

- Idaho Code § 19-5305(1) and (2), Idaho Code § 19-4707, and § 19-4708(1) and (2)(c), all of which govern the collection of fines, forfeitures, costs, and restitution. *Compl.* at 6.

However, it does not appear that any of these statutes creates a private right of action. In Idaho, to determine whether a private cause of action exists under a state statute, a court must analyze the following factors:

> When a legislative provision protects a class of persons by proscribing or requiring certain conduct but does not provide a civil remedy for the violation, the court may, if it determines that the remedy is appropriate in furtherance of the purpose of the legislation and needed to assure the effectiveness of the provision, accord to an injured member of the class a right of action, using a suitable existing tort action or a new cause of action analogous to an existing tort action.

*Yoakum v. Hartford Fire Ins. Co.,* 923 P.2d 416, 421 (Idaho 1996) (emphasis omitted) (relying on Restatement (Second) of Torts § 874A).

In *Yoakum*, the Idaho Supreme Court held that there was no private right of action under criminal statutes where those statutes were intended to protect the general public and provided for a criminal punishment, and where there was no indication that the legislature intended to create a private cause of action or that providing an additional civil remedy was necessary to assure the effectiveness of the statutes. *Id.* The same factors exist here with respect to § 18-313. Therefore, "[i]n the absence of strong indicia of a contrary legislative intent, [the Court] ... conclude[s] that the legislature provided precisely the remedies it

considered appropriate." *Id*. (relying on *Middlesex County Sewerage Auth. v. National Sea Clammers*, 453 U.S. 1, 15 (1981).

The same reasoning applies to the statutes upon which Plaintiff bases his state law claims in this case. All of the statutes relied on by Plaintiff deal with the governance of correctional facilities and the enforcement of judgments. As in *Yoakum*, there is no indication that the Idaho Legislature intended to create a private right of action under any of these statutes.

Because there is no private right of action under the state statutes cited in the Complaint, Plaintiff's state law claims are not plausible and must be dismissed.

## 6. Conclusion

Plaintiff may proceed as outlined above. This Order does not guarantee that Plaintiff's remaining claim will be successful. Rather, it merely finds that Plaintiff's Eighth Amendment failure-to-protect claim against Defendant Christensen is plausible—meaning that the claim will not be summarily dismissed at this time but should proceed to the next stage of litigation. This Order is not intended to be a final or a comprehensive analysis of Plaintiff's claims.

Defendants may still file a motion for dismissal or motion for summary judgment if the facts and law support such a motion. Because (1) prisoner filings must be afforded a liberal construction, (2) prison officials often possess the evidence prisoners need to support their claims, and (3) many defenses are supported by incarceration records, an early motion for summary judgment—rather than a motion to dismiss—is often a more appropriate vehicle for asserting defenses such as non-exhaustion or entitlement to

qualified immunity. In such instances, the parties may be required to exchange limited information and documents directly relevant to the defense at issue.

## ORDER

**IT IS ORDERED:**

1. Plaintiff's Motion to Withdraw Certain Filed Documents (Dkt. 12) is GRANTED. Jay Christensen is REINSTATED as a Defendant in this action.

2. Plaintiff may proceed on his Eighth Amendment failure-to-protect claim against Defendant Christensen All other claims are DISMISSED. Defendant Little is TERMINATED as a party to this action, leaving Christensen as the sole Defendant in this case. If Plaintiff later discovers facts sufficient to support a claim that has been dismissed, Plaintiff may move to amend the complaint to assert such claims.[2]

3. Defendant Christensen will be allowed to waive service of summons by executing, or having counsel execute, the Waiver of Service of Summons as provided by Fed. R. Civ. P. 4(d) and returning it to the Court within 30 days. If Defendant chooses to return the Waiver of Service of Summons, the answer or pre-answer motion will be due in accordance with Rule

---

[2] Any amended complaint must contain all of Plaintiff's allegations in a single pleading and cannot rely upon or incorporate by reference prior pleadings. Dist. Idaho Loc. Civ. R. 15.1 ("Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must reproduce the entire pleading as amended. The proposed amended pleading must be submitted at the time of filing a motion to amend."); *see also Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) ("[An] amended complaint supersedes the original, the latter being treated thereafter as non-existent."), *overruled in part on other grounds by Lacey v. Maricopa County*, 693 F.3d 896, (9th Cir. 2012) (en banc); *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1990) (holding that the district court erred by entering judgment against a party named in the initial complaint, but not in the amended complaint).

12(a)(1)(A)(ii). Accordingly, the Clerk of Court will forward a copy of the Amended Complaint (Dkt. 7), a copy of this Order, and a Waiver of Service of Summons to **Mark Kubinski, Deputy Attorney General for the State of Idaho, Idaho Department of Corrections, 1299 North Orchard, Ste. 110, Boise, Idaho 83706**, on behalf of Defendant Christensen.

4. Should counsel determine that the individual for whom counsel was served with a waiver of service is not, in fact, its employee or former employee, or that counsel will not be appearing for that individual, it should file a notice within the CM/ECF system, with a copy mailed to Plaintiff, identifying that service will not be waived.

5. If Plaintiff receives a notice indicating that service will not be waived, Plaintiff will have an additional 90 days from the date of such notice to file a notice of physical service address of Defendant Christensen, or this action may be dismissed without prejudice.

6. The parties must follow the deadlines and guidelines in the Standard Disclosure and Discovery Order for Pro Se Prisoner Civil Rights Cases, issued with this Order.

7. Any amended pleadings must be submitted, along with a motion to amend, within 150 days after entry of this Order.

8. Dispositive motions must be filed no later than 300 days after entry of this Order.

9. Each party must ensure that all documents filed with the Court are

simultaneously served upon the opposing party (through counsel if the party has counsel) by first-class mail or via the CM/ECF system, pursuant to Federal Rule of Civil Procedure 5. Each party must sign and attach a proper mailing certificate to each document filed with the court, showing the manner of service, date of service, address of service, and name of person upon whom service was made.

10. The Court will not consider ex parte requests unless a motion may be heard ex parte according to the rules and the motion is clearly identified as requesting an ex parte order, pursuant to Local Rule of Civil Practice before the United States District Court for the District of Idaho 7.2. ("Ex parte" means that a party has provided a document to the court, but that the party did not provide a copy of the document to the other party to the litigation.)

11. All Court filings requesting relief or requesting that the Court make a ruling or take an action of any kind must be in the form of a pleading or motion, with an appropriate caption designating the name of the pleading or motion, served on all parties to the litigation, pursuant to Federal Rule of Civil Procedure 7, 10 and 11, and Local Rules of Civil Practice before the United States District Court for the District of Idaho 5.1 and 7.1. The Court will not consider requests made in the form of letters.

12. No party may have more than three pending motions before the Court

at one time, and no party may file a motion on a particular subject matter if that party has another motion on the same subject matter currently pending before the Court. Motions submitted in violation of this Order may be stricken, summarily denied, or returned to the moving party unfiled.

13. Plaintiff must notify the Court immediately if Plaintiff's address changes. Failure to do so may be cause for dismissal of this case without further notice.

14. Pursuant to General Order 324, this action is hereby returned to the Clerk of Court for random civil case assignment to a presiding judge, on the proportionate basis previously determined by the District Judges, having given due consideration to the existing caseload.

DATED: January 16, 2020

David C. Nye
Chief U.S. District Court Judge